UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**WILLIAM G. CAMPBELL and**
**MAURENE J. CAMPBELL**,                              Chapter 13
    Debtors                                              Case No. 07-10358-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~

**MAURENE J. CAMPBELL**,
    Plaintiff
v.                                                        Adv. P. No. 07-1401
**MICHAEL K. BUCKLEY**,
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

I. INTRODUCTION

    The matter before the Court is the "Motion of Debtors, William and Maurene Campbell, Requesting Determination of Status and to Disallow Proof of Secured Claim by Michael Buckley under rule 3007-1." Through their Motion, the Debtors ask the Court to find that Michael Buckley ("Buckley"), who owns property with Maurene Campbell ("Campbell") as a tenant in common, and who holds a mortgage secured by the co-owned property, is only entitled to attorneys' fees as part of his secured claim to the extent that

1

those fees are attributable to his status as a lender and not to his status as a co-owner of property. Buckley opposed the Motion. The Court heard the matter on December 10, 2008, and the parties filed supplemental briefs at the end of January, 2009. The issue before the Court is to what extent Buckley is entitled to attorneys' fees under 11 U.S.C. § 506(b) and the mortgage instrument .

**II. FACTS**

Maurene J. Campbell and her spouse, William G. Campbell filed a joint Chapter 13 petition on January 22, 2007. On February 15, 2007, less than one month after the Debtors filed their Chapter 13 petition, Buckley, Campbell's brother, filed a "Motion for Relief from the Automatic Stay to Pursue Appeal and Related Matters" "for cause" pursuant to 11 U.S.C. § 362(d)(1). In his motion, Buckley referenced the Debtor's appeal from a decision of the Massachusetts Trial Court, Probate and Family Court Department (the "Suffolk Probate Court"), after a trial on the merits with respect to ownership of real property located at 465 Revere Beach Boulevard, Revere, Massachusetts (the "property"). In so doing, Buckley set forth the genesis of a legal feud between the siblings that persists to this day.

According to Buckley, he and his sister agreed in 2001 to invest in the property which contains five, ocean-front apartment units. They agreed to pay an equal amount toward the down payment and to share equally in the payment of the purchase money mortgage, as well as operating and maintenance expenses for the property. They also agreed that the Debtor and her spouse, co-debtor William Campbell, could occupy one of

the units as their residence. Additionally, the parties agreed to manage and operate the property through the BCI Ocean Realty Trust (the "Trust"), which they declared on October 30, 2001. Buckley and Campbell were the trustees and each held a 50 percent beneficial interest in the Trust.

On October 31, 2001, the Trust took title to the property. Because Campbell and her spouse could not afford one-half of the deposit for the property, Buckley advanced the entire amount of the deposit in the sum of $142,500. The Debtors then executed a demand promissory note to Buckley in the original principal amount of $71,250, and the Trust gave a mortgage to Buckley to secure the Debtors' portion of the deposit Buckley advanced for her benefit. The Trust did not record the mortgage.

In May of 2002, Buckley and Campbell decided to refinance the property. The lender insisted that the Trust convey the property to Buckley and Campbell as tenants in common. The Trust conveyed the property to them for nominal consideration. According to Buckley, the parties orally agreed to reconvey the property to the Trust. On the day of the refinancing, May 31, 2002, the Debtors executed a demand promissory note to Buckley in the amount of $3,750.

Between May of 2001 and 2004, neither Buckley nor Campbell sought to enforce the oral agreement to transfer the property back to the Trust. The Debtors paid monthly interest on the two promissory notes to Buckley until January, 2004. According to Buckley, in the spring of 2004, Campbell informed him that she and her spouse could not afford to satisfy the unrecorded mortgage.

On March 19, 2004, Campbell, individually, executed a mortgage (the "2004 Mortgage") in favor of Buckley to secure repayment of the outstanding notes totaling $75,000. Buckley recorded the 2004 Mortgage, and, in the summer of 2004, commenced foreclosure proceedings.

On June 7, 2004, Campbell filed a petition in the Suffolk Probate Court to partition the property. On December 19, 2006, that court entered a judgment dismissing Campbell's petition for partition, ordering enforcement of the oral agreement to transfer the property to the Trust, and ordering both Buckley and Campbell to transfer all right, title and interest in the property to the Trust within 30 days. The Suffolk Probate Court also stated: "[s]hould Mr. Buckley proceed with foreclosure, any surplus equity (i.e., the balance left after payment of the mortgages and *counsel fees and costs directly related to the foreclosure*) shall be paid to the BCI Ocean Realty Trust." Cambell v. Buckley, Nos. 04E-0058, 04E-0103, Judgment (Dec. 19, 2006) (emphasis supplied). The Debtors filed their Chapter 13 petition approximately one month after the entry of the Suffolk Probate Court judgment.

Neither Buckley nor Campbell were satisfied with the Suffolk Probate Court judgment. The Debtor filed both a motion for stay of the judgment and an appeal, and Buckley filed a Motion to Alter or Amend Judgment pursuant to M. R. Civ. P. 59(e) and a Motion to Stay Paragraph 5 of the Judgment in which he sought an estimated 90 to 120 days to transfer his interest in the property as a tenant in common to the Trust so that he could conduct a mortgagee's sale in accordance with Mass. Gen. Laws ch. 244, § 14, which the Massachusetts Land Court had permitted.

The Motion for Relief from Stay, to which the Debtors filed a timely response in which they observed that the property has substantial equity, was needed for their reorganization, and that they did not dispute the validity of the 2004 Mortgage, was the first contested matter between Buckley and Campbell in the Debtors' Chapter 13 case. Buckley objected to confirmation of the Debtors' Chapter 13 Plan, which was predicated upon a $900,000 valuation of the property, subject to mortgage debt and other encumbrances of $499,196.27. Through their plan, the Debtors had proposed to cure arrearages owed to the holder of the first mortgage on the property, CitiMortgage, Inc. in the sum of $3,000, as well as mortgage arrearages owed to Buckley as the holder of a second mortgage on the property in the sum of $5,500. They also proposed to make monthly mortgage payments directly to both CitiMortgage, Inc. whose claim was listed on Schedule D in the amount of $405,723.49, and to Buckley.

In his objection to confirmation of the Debtors' plan, Buckley asserted that his secured claim was in the approximate amount of $160,400 and that the notes matured prepetition. Additionally, he asserted that the Debtor misstated her interest in the property as a co-tenancy on Schedule A - Real Property. He opined that the market value of a tenancy in common interest exceeds the market value of a beneficial interest in the Trust, which would be reported on Schedule B - Personal Property. Additionally, he asserted that the Debtor misstated her interest in the property so that she could acquire a homestead exemption and could retain the interest in the property against his claim and those of unsecured creditors.

5

Buckley also objected to the homestead declared by the Debtor pursuant to Mass. Gen. Laws ch. 188, § 1, and he filed a second Motion for Relief from the Automatic Stay or, in the Alternative, for Adequate Protection, in which he asserted that the Campbells had failed to make $4,075.30 in post-petition payments to CitiMortgage, Inc. with respect to its first mortgage and $1,500 in post-petition payments to him on his mortgage. He added that Campbell had failed to forward rent proceeds collected from tenants in violation of the assignment of rents.

The Debtors responded, attaching copies of checks establishing that payments had been brought current. On May 3, 2007, the Debtors filed an application to employ a real estate broker. Buckley objected, noting that he objected to the employment of "any real estate broker."

In early May of 2007, the Court denied Buckley's motions for relief from the automatic stay and overruled his objection to the homestead exemption. The Court also ordered the Debtors to file an amended Chapter 13 plan. On June 20, 2007, the Court authorized the Debtors to employ a real estate broker, although one month later they moved for authority to employ another broker.

On August 22, 2007, the Debtors objected to Buckley's proof of claim. The proof of claim set forth the following:

Computation of Claim

Principal - -

| | |
|---|---|
| Note of Oct. 30, 2001 | $71,250.00 |
| Note of May 31 2002 | $ 3,750.00 |

    Accumulated interest - - 
    8% simple interest on Principal    $ 7,000.00
    for payment next due Feb. 2006
    (14 months)

    Pre-Petition Expenses
    Arising from Rental Property    $ 1,339.83

    Attorneys' Fees - -
    See paragraph 14 of Mortgage    $ 77,129.70

    Total    $160,469.53

Specifically, they objected to Buckley's claim for $77,129 in attorneys' fees pursuant to paragraph 14 of the 2004 Mortgage which provides the following:

> Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorney's fees, property inspection and valuation fees.

Paragraph 9 of the Mortgage also provides:

> If (a) a Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations) . . ., the Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.

The 2004 Mortgage is a uniform instrument. Pages two through sixteen of the mortgage contain the following language at the bottom of each page: "MASSACHUSETTS - - Single Family - - Fannie Mae UNIFORM INSTRUMENT    Form 3022 1/01 (page [_] of 16 pages."

7

On September 11, 2007, the Debtors moved for a second extension of time within which to file an amended plan for a period of 30 days after resolution of the objection to Buckley's claim. Buckley objected, arguing that the Debtors "have without justification failed to file a plan capable of confirmation for almost eight (8) months . . . ."[1] At a hearing held on October 4, 2007 on the Debtors' motion for an extension of time, the Court continued the motion and ordered the Debtors to file a complaint under 11 U.S.C. § 363(h) by October 22, 2007. On November 1, 2007, the Court consolidated the adversary proceeding commenced by the Debtors under section 363(h) with the Debtors' objection to Buckley's proof of claim, as Buckley had filed a six-page Response to the Objection on October 12, 2007.

On November 15, 2007, CitiMortgage, Inc. filed a Motion for Relief from Stay, disclosing that the Debtor and Buckley had granted a mortgage in the original principal amount of $427,500 to Homestead Funding Corp. on or around May 31, 2002; that as of November 14, 2007, approximately $413,301.45 in principal, interest, late fees and other charges was due; that the prepetition arrearage was $4,598.10; that the Debtors had failed to remain current with postpetition payments; that the loan was in default for the September 1, 2007 payment and all payments thereafter; that the postpetition arrearage was $11,249.49, excluding attorney's fees and costs; and that it was entitled to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1).

---

[1] Buckley noted at the time that "by her own numbers, [Campbell] has equity in 465 Revere Beach Parkway of approximately $86,500 even if this court allows Buckley's disputed secured claim in full."

8

Buckley, adopting the factual allegations in CitiMortgage, Inc.'s motion for relief from stay, promptly filed his own motion for relief from stay, noting that the co-debtor stay imposed by 11 U.S.C. § 1301 did not protect him. The Debtors objected to CitiMortgage, Inc.'s motion and Buckley's motion, arguing that Buckley's motion was without merit and "designed for the sole purpose of harassing the Debtors and forcing them to incur unnecessary and unwarranted legal fees." Buckley, in turn, filed a response to the Debtors' opposition, arguing that the arrears to CitiMortgage, Inc. were the result of Campbell's failure to pay rents she collects or from her failure to pay her share of the balance, constituting mismanagement of the property. Buckley also cited other evidence of mismanagement stemming from storm damage to the property and mismanagement of the sale of the property as constituting grounds for relief from the automatic stay. On January 10, 2008, the court denied Buckley's third motion for relief from stay.

After a series of continuances, CitiMortgage, Inc. and the Debtors resolved CitiMortgage Inc.'s motion. The parties filed a stipulation agreeing that, as of May 1, 2008, the postpetition arrearage was $574.10, which the Debtors agreed to pay on or before November 2008.

The parties' positions in the adversary proceeding have proved as contentious as their positions in the main case. Buckley filed an answer and a two-count counterclaim seeking a declaratory judgment and specific performance of the Debtor's promise to convey her interest in the property to the Trust. The Debtors moved to dismiss the counterclaims. After hearing, the Court dismissed Buckley's counterclaim for specific

performance. In September of 2008, Buckley moved for summary judgment. The Debtor objected and filed a cross-motion for summary judgment.

On October 31, 2008, the Debtors filed the Motion that is now before the Court, which pertains to their Objection to Buckley's claim. They seek to disallow the claim and, in particular, the amount of the claim attributable to attorneys' fees. In his Response to the Debtor's Objection, Buckley attached the Affidavit of Alvin S. Nathanson, who together with his firm, Nathanson & Goldberg, P.C., represented Buckley in the Suffolk Probate Court and Land Court matters. In his Affidavit, Attorney Nathanson stated:

> [O]ur efforts included the sending of a default notice to Maureen Campbell, the commencement of a foreclosure proceeding in the Land Court from the filing of a complaint to foreclose to the establishment of a mortgagee's sale of real estate; the defense of a petition for partition brought by Maureen Campbell in the Suffolk Probate and Family Court; the defense of a suit brought by Maureen Campbell in the Suffolk Superior Court seeking to stop the foreclosure of the mortgage given to Michael Buckley; and a separate equity action brought by Michael Buckley seeking to adjudicate his rights under the mortgage given by Maureen Campbell and to the subject property and the defense of counterclaims field by the Campbells in that case.

He added:

> After the Suffolk Superior Court case brought by the Campbells to stop the foreclosure was transferred by the Chief Administrative Judge to the Suffolk Probate and Family court, all matters were consolidated into one trial before Judge Smoot. After extensive discovery and pretrial motions, those cases were tried and briefed before Judge Smoot, with a decision rendered by him that was subject to various post trial motions prior to the filing of the within bankruptcy. One of the matters decided by Judge Smoot was a Judgment vacating the previously issued injunction stopping the mortgagee's sale of real estate of Michael Buckley. Shortly after that Judgment issued, we proceeded with the mortgagee's sale of real estate, set a date for the foreclosure sale after complying with the requirements of M.G.L. c. 244, § 14, at which time the Campbells filed the subject bankruptcy.

Attorney Nathanson attached copies of invoices containing time records for the period beginning in July of 2004 and ending in August of 2007. The records, while reasonably detailed, do not contain information as to the hourly rates charged by attorneys working on behalf of Buckley and some of the itemizations lack specificity as to whether they relate to the foreclosure proceedings or the petition to partition, Buckley's defense of that petition and his counterclaims related to the partition.

Buckley also filed an Affidavit in support of a claim for prepetition expenses in the sum of $1,339.83. Of those expenses, $877.33 related to unpaid charges for goods, services and other expenses incurred by the Trust pertaining to the property. The balance of the amount claimed, Buckley stated was a $500 "fee for writing 2004 Mortgage" and a $175 "recording fee for 2004 Mortgage."

### III. POSITIONS OF THE PARTIES

A. The Debtor

The Debtors argued that "it appears from the amount sought by Buckley that most of the sum sought as attorney fees relate to defense of Campbell's Petition to Partition action in the Suffolk Probate Court," adding that "[t]here is no express authority in the Mortgage nor under any statutory provision which permits Buckley to seek attorney fees wholly unrelated to foreclosure." The Debtors urged the Court to distinguish between Buckley's two hats: one as co-owner and the other as mortgagee. The Debtors also objected to "Pre-petition expenses set forth in the proof of claim because of a lack of itemized accounting."

In their supplemental brief, the Debtors, citing, *inter alia*, Leventhal v. Krinsky, 325 Mass. 336, 341 (1950), argued that under Massachusetts law, a creditor can only seek payment of costs and expenses that "'arose out of and were incidental to the collection of the note . . . in accordance with the terms of the note.'"

B. Buckley

Buckley argued that because Campbell agreed to give her co-tenancy interest in the Property as collateral for the 2004 Mortgage, "it follows that the 2004 Mortgage gives rise to Buckley's claims for fees, costs, or charges incurred in ' . . . a legal proceeding that might significantly affect Lender's interest in the Property,' such as a partition action." He also argued against restricting the meaning of "Lender's interest" to Buckley's interest in the property as mortgagee, arguing that it is a strained reading of the mortgage. He reasoned that the instrument does not define the term "interest," and does not limit the meaning given to the term "Lender" because, in his view, "the instrument clearly incorporates Buckley's interest in the Property as a co-tenant and mortgagee of his co-tenant's interest."

In his supplemental brief, Buckley further argued that Campbell triggered her covenant to defend title generally by initiating the partition petition or, alternatively, the circumstances evidence that she gave the 2004 Mortgage as security for her interest as co-tenant. He stated that the petition to partition, unlike a sale of a co-tenancy interest, the proceeds of which would be subject to encumbrances of record, threatened his title as a co-tenant because a court might order a sale in the partition proceeding, thus triggering the language in the 2004 Mortgage to defend title.

Buckley also argued that paragraphs 9 and 14 of the Mortgage, reproduced above, make Campbell financially responsible for attorneys' fees associated with the petition to partition. He added that attendant circumstances, such as the business plan referenced in the Suffolk Probate Court Memorandum of Decision, the deed of transfer, and deposition testimony "make clear that Maurene Campbell intended to act in her capacities as co-tenant and as borrower in giving the 2004 Mortgage and she intended to protect both interests.

## IV. DISCUSSION

"Pursuant to 11 U.S.C. § 506(b), a creditor may recover 'fees, costs, or charges' if the creditor can demonstrate that: (1) the creditor is oversecured, meaning that the value of the property securing the claim is greater that the amount of the claim; (2) the agreement giving rise to the claim provides for attorneys' fees, costs, or charges; and (3) the fees, costs, or charges are reasonable." Holland v. EMC Mortg. Corp. (In re Holland), 374 B.R. 409, 429 (Bankr. D. Mass. 2007).[2] The secured creditor has the burden to prove by a preponderance

---

[2] The Court notes that there is a split of authority regarding whether section 506(b) applies to prepetition fees, costs, and expenses. See In re Woods Auto Gallery, Inc., 379 B.R. 875, 882 (Bankr. W.D. Mo. 2007); In re Leatherland Corp., 302 B.R. 250, 256-57 (Bankr. N.D. Ohio 2003). In In re Center, 282 B.R. 561, 565 (Bankr. D.N.H. 2002), the court, in agreeing with the majority courts addressing the issue, stated:

> There is a split of authority on the issue of whether state law governs the enforceability of attorneys' fees provisions in "agreements" under section 506(b). A majority of courts, including all of the circuit courts of appeal that have considered the issue, hold that an attorneys' fee provision that is otherwise unenforceable under state law may still form the basis for allowance of a claim for attorneys' fees under section 506(b). In re Welzel, 275 F.3d 1308, 1313 (11th Cir.2001) (Congress intended to alter the traditional relation between federal and state law when it enacted section 506(b)); First W. Bank & Trust v. Drewes (In re Schriock Constr., Inc.), 104

of the evidence both the reasonableness of the fees and their necessity to protect the creditor's interest. Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 (B.A.P. 9th Cir. 2003). Federal law governs the determination of reasonableness. In re Danise, 112 B.R. 492 (Bankr. D. Conn. 1990).

Because it is undisputed that Buckley is oversecured, and the Mortgage at paragraphs 9 and 14 provides for attorneys' fees, the only issue before the Court is whether legal fees billed by Nathanson & Goldberg, P.C. and paid by Buckley in defending the petition for partition and seeking the imposition of a constructive trust, in conjunction with

---

      F.3d 200, 202 (8th Cir.1997) (allowing attorneys' fees although state statute expressly stated that attorneys' fees provisions in an instrument were against public policy and void); Joseph F. Sanson Inv. Co. v. 268 Ltd., 789 F.2d 674, 675 (9th Cir.1986) (section 506(b) preempts state law governing the availability of attorneys' fees as part of a secured claim); Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.), 794 F.2d 1051, 1056 (5th Cir.1986) (federal law governs enforcement of attorneys' fees provisions notwithstanding contrary state law); Unsecured Creditors' Comm. v. Walter E. Heller & Co. Southeast, Inc. ( In re K.H. Stephenson Supply Co.), 768 F.2d 580, 585 (4th Cir.1985) (Congress intended to abrogate preexisting requirement that attorneys' fee agreements were enforceable only in accordance with state law).

282 B.R. at 565.

      Even if this Court were to conclude that section 506(b) was inapplicable to attorneys' fees and costs incurred by Buckley prepetition, the Court would still need to resolve the issue of his contractual entitlement to attorneys' fees. That entitlement stems from his status as a Lender. To the extent that he seeks fees outside that capacity, the American Rule, which requires the parties to bear the expense of their own attorneys' fees unless they are provided by statute or contract, applies. *See* Travelers Cas. and Sur. Co. of Am. V. Pac. Gas and Elec. Co., __ U.S. __, 127 S.Ct.119, 1200 (2007).

the defense of the petition for partition, are encompassed within the language of the 2004 Mortgage. That mortgage delineated the purpose for which attorneys' fees could be incurred, namely "protecting Lender's interest in the Property and rights under this Security Instrument."

The Court rejects Buckley's arguments and suggestions that this Court should consider evidence other than the language used in the 2004 Mortgage and that the term "Lender" should have any meaning other than mortgagee. Both the notes and the 2004 Mortgage identify Buckley as a "Lender." The agreement between the parties was fully integrated, and the language used in the 2004 Mortgage instrument is not ambiguous. Thus, the parol evidence rule precludes the introduction of evidence to vary the terms of Mortgage instrument. *See* In re Thistle, 28 B.R. 23 (B.A.P. 1st Cir. 1983). Moreover, the Mortgage is a uniform instrument. The Mortgage and the concomitant entitlement to legal fees relates only to Buckley's interest in the property as a Lender.

Even if this Court were to be persuaded by some or all of Buckley's arguments, however, there would remain a substantial issue as to whether the attorneys' fees incident to the defense of the petition for partition were reasonable. In view of 1) the value of the property ($900,000 subject to secured claims of $499,196.27, according to the Debtors' Schedule A), 2) the amount of the secured debt owed Buckley in the original principal amount of $75,000, and 3) the fees incurred by Nathanson & Goldberg as set forth in the proof of claim ($77,129.70), the amount of the fees in relation to the principal amount of the debt suggests that fees unrelated to the foreclosure may be, in any event, unreasonable

under the terms of the 2004 Mortgage because of the absence of any likelihood that repayment of Buckley's Mortgage upon foreclosure was in serious jeopardy.

"Where services are not reasonably necessary to protect its interests, or where action is taken because of a lawyer's excessive caution or overzealous advocacy, in exercise of their discretion, courts have the right and are duty-bound to disallow the fees and costs requested." Washington Fed. Savs. Bank v. McGuier (In re McGuier), 346 B.R. 151, 164-65 (Bankr. W.D. Pa. 2006)(citing, *inter alia* In re Green Valley Beer, 281 B.R. 253, 258 (Bankr. W.D. Pa. 2002)). As the court noted in McGuier,"[a]n oversecured creditor should not be given a "blank check" to incur attorney fees and costs with the expectation it will automatically be reimbursed for those fees and costs out of its collateral." *See also* In re Wanechek, 349 B.R. 836 (Bankr. E.D. Wash. 2006); In re Chase, No. 03-10223-JMD, 2003 WL 22056652 at *2 (Bankr. D.N.H. Aug. 25, 2003). Similarly, in Sensencih v. Molleur (In re Chase), 336 B.R. 681, 685 (Bankr. D. Vt. 2005), a factually distinguishable case, the court refused to reimburse a secured creditor for its defense of a fraudulent transfer action after a foreclosure sale, finding the secured creditor is not entitled to fees to "protect a windfall."

Based upon the terms of the 2004 Mortgage and the case law recited above, the Court finds that Buckley is only entitled to legal fees incident to his position as Lender/mortgagee, including any and all fees and costs relating to the Land Court action and the pursuit of foreclosure in the Suffolk Probate Court. Whatever his motivation for defending the petition for partition and seeking declaratory and equitable relief in the Suffolk Probate Court, Buckley's attorneys' fees incurred in that action, unless related to

the foreclosure of Campbell's mortgage, cannot be considered part of his secured claim under 11 U.S.C. § 506(b).

The Court recognizes that Nathanson & Goldberg did not prepare the invoices attached to Buckley's Response to the Debtors' objection to his proof of claim in anticipation of a bankruptcy case. The invoices thus lack the specificity required under the Bankruptcy Code and, in particular, Fed. R. Bankr. P. 2016 and MLBR 2016-1. The invoices prepared by Nathanson & Goldberg do not contain information as to the attorneys' hourly rates for the periods at issue and some time entries do not delineate whether services were incident to the foreclosure proceedings. In short, this Court is unable to apply the "lodestar" method to determine "a reasonable hourly rate applied to reasonable hours expended in rendering necessary services." *See* In re Chase, 2003 WL 22056652 at *2 (citing, *inter alia* Boston & Maine Corp. v. Moore, 776 F.2d 2 (1st Cir.1985)).

## V. CONCLUSION

In view of the foregoing, the Court shall enter an order requiring the filing of a fee application which contains an itemization of the legal services relating to the foreclosure proceeding and comports with MLBR 2016-1.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
Dated: March 16, 2009                United States Bankruptcy Judge
cc: Jeffrey J. Cymrot, Esq., Jordon L. Shapiro, Esq., Nina M. Parker, Esq., Alvin S. Nathanson, Esq., Carolyn Bankowski, Esq.

18